# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
KRISTEN COX

### DEFENDANTS
LINCARE INC.

**(b)** County of Residence of First Listed Plaintiff: **CUMBERLAND**
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant: **ATLANTIC**
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Brian C. Farrell, Esq. Sidney L. Gold & Assoc., P.C.
1835 Market St., Ste. 515, Phila, PA 19103  215-569-1999

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*
- [ ] 1 U.S. Government Plaintiff
- [ ] 2 U.S. Government Defendant
- [X] 3 Federal Question *(U.S. Government Not a Party)*
- [ ] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* (For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated or Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated and Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

**CONTRACT**
- [ ] 110 Insurance
- [ ] 120 Marine
- [ ] 130 Miller Act
- [ ] 140 Negotiable Instrument
- [ ] 150 Recovery of Overpayment & Enforcement of Judgment
- [ ] 151 Medicare Act
- [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- [ ] 153 Recovery of Overpayment of Veteran's Benefits
- [ ] 160 Stockholders' Suits
- [ ] 190 Other Contract
- [ ] 195 Contract Product Liability
- [ ] 196 Franchise

**TORTS — PERSONAL INJURY**
- [ ] 310 Airplane
- [ ] 315 Airplane Product Liability
- [ ] 320 Assault, Libel & Slander
- [ ] 330 Federal Employers' Liability
- [ ] 340 Marine
- [ ] 345 Marine Product Liability
- [ ] 350 Motor Vehicle
- [ ] 355 Motor Vehicle Product Liability
- [ ] 360 Other Personal Injury
- [ ] 362 Personal Injury - Medical Malpractice

**TORTS — PERSONAL INJURY**
- [ ] 365 Personal Injury - Product Liability
- [ ] 367 Health Care/Pharmaceutical Personal Injury Product Liability
- [ ] 368 Asbestos Personal Injury Product Liability

**PERSONAL PROPERTY**
- [ ] 370 Other Fraud
- [ ] 371 Truth in Lending
- [ ] 380 Other Personal Property Damage
- [ ] 385 Property Damage Product Liability

**REAL PROPERTY**
- [ ] 210 Land Condemnation
- [ ] 220 Foreclosure
- [ ] 230 Rent Lease & Ejectment
- [ ] 240 Torts to Land
- [ ] 245 Tort Product Liability
- [ ] 290 All Other Real Property

**CIVIL RIGHTS**
- [ ] 440 Other Civil Rights
- [ ] 441 Voting
- [X] 442 Employment
- [ ] 443 Housing/Accommodations
- [ ] 445 Amer. w/Disabilities - Employment
- [ ] 446 Amer. w/Disabilities - Other
- [ ] 448 Education

**PRISONER PETITIONS — Habeas Corpus:**
- [ ] 463 Alien Detainee
- [ ] 510 Motions to Vacate Sentence
- [ ] 530 General
- [ ] 535 Death Penalty

**Other:**
- [ ] 540 Mandamus & Other
- [ ] 550 Civil Rights
- [ ] 555 Prison Condition
- [ ] 560 Civil Detainee - Conditions of Confinement

**FORFEITURE/PENALTY**
- [ ] 625 Drug Related Seizure of Property 21 USC 881
- [ ] 690 Other

**LABOR**
- [ ] 710 Fair Labor Standards Act
- [ ] 720 Labor/Management Relations
- [ ] 740 Railway Labor Act
- [ ] 751 Family and Medical Leave Act
- [ ] 790 Other Labor Litigation
- [ ] 791 Employee Retirement Income Security Act

**IMMIGRATION**
- [ ] 462 Naturalization Application
- [ ] 465 Other Immigration Actions

**BANKRUPTCY**
- [ ] 422 Appeal 28 USC 158
- [ ] 423 Withdrawal 28 USC 157

**INTELLECTUAL PROPERTY RIGHTS**
- [ ] 820 Copyrights
- [ ] 830 Patent
- [ ] 835 Patent - Abbreviated New Drug Application
- [ ] 840 Trademark
- [ ] 880 Defend Trade Secrets Act of 2016

**SOCIAL SECURITY**
- [ ] 861 HIA (1395ff)
- [ ] 862 Black Lung (923)
- [ ] 863 DIWC/DIWW (405(g))
- [ ] 864 SSID Title XVI
- [ ] 865 RSI (405(g))

**FEDERAL TAX SUITS**
- [ ] 870 Taxes (U.S. Plaintiff or Defendant)
- [ ] 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- [ ] 375 False Claims Act
- [ ] 376 Qui Tam (31 USC 3729(a))
- [ ] 400 State Reapportionment
- [ ] 410 Antitrust
- [ ] 430 Banks and Banking
- [ ] 450 Commerce
- [ ] 460 Deportation
- [ ] 470 Racketeer Influenced and Corrupt Organizations
- [ ] 480 Consumer Credit (15 USC 1681 or 1692)
- [ ] 485 Telephone Consumer Protection Act
- [ ] 490 Cable/Sat TV
- [ ] 850 Securities/Commodities/Exchange
- [ ] 890 Other Statutory Actions
- [ ] 891 Agricultural Acts
- [ ] 893 Environmental Matters
- [ ] 895 Freedom of Information Act
- [ ] 896 Arbitration
- [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- [ ] 950 Constitutionality of State Statutes

## V. ORIGIN *(Place an "X" in One Box Only)*
- [X] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
Section 1981, 42 U.S.C. §1981

Brief description of cause:
Employment discrimination matter

## VII. REQUESTED IN COMPLAINT:
- [ ] CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.
- DEMAND $ 150,000 IN EXCESS
- CHECK YES only if demanded in complaint: JURY DEMAND: [X] Yes [ ] No

## VIII. RELATED CASE(S) IF ANY *(See instructions):*
JUDGE _____  DOCKET NUMBER _____

DATE: 10/13/2023
SIGNATURE OF ATTORNEY OF RECORD: /s/BRIAN C. FARRELL, ESQUIRE   Attorney For Plaintiff   #NJ ID: 129622014

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

I.(a)  **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

  (b)  **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

  (c)  **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

II.  **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

III.  **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

IV.  **Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

V.  **Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statute.

VI.  **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service.

VII.  **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

VIII.  **Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| KRISTEN COX<br><br>                    Plaintiff,<br><br>     -against-<br><br>LINCARE INC.<br><br>                    Defendant. | Civ. No.:<br><br><br><br>JURY TRIAL DEMANDED |

## COMPLAINT

**I.     PRELIMINARY STATEMENT**

Plaintiff, Kristen Cox ("Plaintiff" or "Cox"), through her undersigned counsel, files this Civil Action Complaint against her former employer, Defendant Lincare, Inc. ("Defendant" or "Lincare"). Plaintiff asserts race and disability discrimination, retaliation, and failure to accommodate claims against Defendant under the New Jersey Law Against Discrimination, N.J.S.A., §10:5-1, *et seq.* ("NJLAD"); and Section 1981, 42 U.S.C. §1981. Plaintiff seeks all available damages, including economic loss, compensatory, and punitive damages, along with all other relief under applicable federal and state law as this Court deems appropriate.

**II.    PARTIES**

1.     Plaintiff Kristen Cox is an adult black woman and citizen of New Jersey, currently residing in Vineland, 08360.

2.     At all times material hereto, Plaintiff was a qualified individual with a disability within the meaning of the laws at issue, in that she suffered from a physical impairment which substantially limited one or more major life activities, had a record of such impairment, and/or was regarded or perceived by Defendant as having such impairment.

1

3. Defendant Lincare Inc. is, upon information and belief, a Delaware corporation that maintains a principal place of business at 19387 US 19 North, Clearwater, Florida 33764.

4. At all times material to this action, Plaintiff worked out of Defendant's New Jersey office located at 651 S. Mill Road, Absecon, New Jersey 08201.

5. At all times material to this action, Defendant was an employer within the meanings of the state and federal laws which form the basis of this action.

6. At all times material to this action, Plaintiff was an employee of Defendant within the meanings of the state and federal laws which form the basis of this action.

7. At all times material to this action, Defendant acted by and through its authorized agents, servants, contractors and/or employees acting within the course and scope of their employment with Defendant and in furtherance of Defendant's business.

### III.     JURISDICTION AND VENUE

8. The causes of action set forth in this Complaint arise under Section 1981, 42 U.S.C. §1981 (Count I); and the NJLAD, N.J.S.A., §10:5-1, *et seq.* (Count II).

9. The District Court has subject matter jurisdiction over Count I (Section 1981) pursuant to 28 U.S.C. §1331.

10. The District Court has supplemental jurisdiction over Count II (NJLAD) pursuant to 28 U.S.C. §1367.

11. Defendant is subject to the personal jurisdiction of this Court because the case arises out of or relates to the contacts of Defendant with New Jersey, the contacts of Defendant are continuous and systematic such that Defendant is considered at home in New Jersey, and/or Defendant has consented to personal jurisdiction by personal service within New Jersey via an authorized agent of the corporation.

12. Venue is proper in this District Court under 28 U.S.C. §1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred within this District.

**IV.   FACTS**

13. Plaintiff was employed by Defendant from October 24, 2017 until her unlawful termination on March 3, 2022.

14. Throughout her tenure, Plaintiff held the position of Healthcare Specialist and competently performed her duties.

15. Plaintiff experienced systemic race discrimination throughout her employment with Defendant.

16. For example, beginning in November 2017, Plaintiff's requests for assistance from Customer Service Representative Sue Pollinger, a White woman, were repeatedly ignored, while similarly situated White employees received assistance.

17. In or about October 2018, Plaintiff was promised a wage increase by her then-supervisor John Dorais. However, this increase was unreasonably delayed, unlike the experience of similarly situated non-African American employees.

18. From November 2018 forward, Pollinger made inappropriate and racially charged comments in Plaintiff's presence, creating a hostile work environment. Pollinger's comments included speculating about Plaintiff's past life as a "hanging judge," discussing negative experiences with African-Americans, and making intrusive inquiries about Plaintiff's life as an African-American woman such as whether she experienced sunburn. Pollinger noted to Plaintiff that in Africa, some tribes use clay as sunblock. Plaintiff took this to imply that people of African ancestry are primitive and unsophisticated.

19. On or about February 20, 2019, Plaintiff discovered a drawing of a monkey with dangling earrings next to Plaintiff's name on a whiteboard used to organize employee vacation schedules. Plaintiff often wore earrings identical to those drawn on the monkey. So distraught by this personal attack on her as an African-American woman, Plaintiff gathered her items and left work for the day.

20. On or about February 21, 2019, the day after Plaintiff discovered the racist depiction of her, Plaintiff returned to work and saw that the drawing was only partially erased. Plaintiff raised this matter with Dorais, who oddly suggested that Pollinger had drawn a picture of herself rather than Plaintiff, thus brushing aside Plaintiff's concerns. At the same time, however, Dorais acknowledged that Pollinger was a "covert racist" and advised Plaintiff to "watch out for her." Dorais assured Plaintiff that he would have a talk with Pollinger. Later in the day, and with prodding from Plaintiff, Dorais attempted a mediation between Plaintiff and Pollinger in which Plaintiff expressed her concerns that Pollinger targeted Plaintiff because of her race. Dorais accused Plaintiff of being "hypersensitive," his previous acknowledgment of Pollinger's racism notwithstanding.

21. On or about February 22, 2019, Plaintiff contacted Kendale Soldano ("Soldano"), Area Manager, and voiced her concerns about the racial hostile work-environment to which she was subject. Plaintiff also placed Soldano on notice that said hostile work-environment was harming her mental health. Despite being on notice that Plaintiff was possibly experiencing an accommodation-required disability related to her mental health, Soldano failed to initiate an interactive process for an accommodation.

22. Near the end of February 2019, Defendant's Human Resources Department began to investigate the racially charged harassment Plaintiff experienced. During the investigation, the

4

Human Resources Representative ("HR Representative"), name unknown, suggested that Plaintiff was to blame for Pollinger's behavior and indicated that Plaintiff was "aggressive" in reporting Pollinger to a supervisor. Almost immediately after this investigation, nearly all of Plaintiff's coworkers ceased communicating with her.

23. Thereafter, Defendant embarked on a campaign of retaliation against Plaintiff for reporting unlawful discrimination in the workplace.

24. For example, throughout the rest of 2019, certain employees of Defendant persistently delayed notifying Plaintiff of her delivery schedule, causing her to unnecessarily work extended hours and make deliveries during heavy traffic, further delaying completion of her work.

25. Beginning in or about April 2019, Plaintiff made repeated inquiries to Soldano for career advancement within the company. Soon after, Plaintiff interviewed for the Center Manager position but was not selected. Instead, John Couchoud ("Couchoud"), a white male, was hired for the position. Upon information and belief, Plaintiff was not promoted due to her reports of unlawful discrimination in the workplace.

26. In May 2019, and without explanation or discernable legitimate business purpose, Defendant substantially increased Plaintiff's workload. For example, Plaintiff was given a number of new responsibilities falling well outside of her job description, including training new employees and assisting with patient walk-ins.

27. On or about March 13, 2019, Plaintiff informed Couchoud of her declining mental health, because of the discrimination and retaliation she experienced, but Defendant failed to engage in an interactive process to determine whether Plaintiff needed a reasonable accommodation.

28. Beginning in or about September 2019, Plaintiff began several conversations with Couchoud about advancing in the company, and Couchoud informed Plaintiff that he would soon resign from his position and he believed Plaintiff was best suited to replace him.

29. In or about January 2020, Defendant unjustifiably placed additional tedious responsibilities on Plaintiff including a requirement that she be on call throughout the day to make deliveries. These responsibilities fell far outside of Plaintiff's job description and were not placed on similarly situated employees, suggesting that the new responsibilities were given to Plaintiff as continuing retaliation.

30. On or about January 28, 2020, Plaintiff was issued an unjustified subpar performance review in which she was docked points for clerical errors that were not her fault. Plaintiff was also docked for fictitious attendance issues. By way of background, Plaintiff only missed work on occasions for which she received approved Paid Time Off (PTO), and Defendant failed to articulate the precise nature of said "attendance issues." As evidence that this performance review was unjustified, Couchoud told Plaintiff during the review that he would recommend Plaintiff to fill his position upon his resignation.

31. On or about June 17, 2020, Plaintiff again spoke with Couchoud about her desire for a promotion into a management position. Couchoud informed Plaintiff that she was the most qualified employee for such a promotion. That same day, Plaintiff overheard two White coworkers Lauren Magill ("Magill") and Paige Dabbenigno ("Dabbenigno") discussing their desire to "beat up" Plaintiff. Because of Plaintiff's prior experience with Human Resources, in which she was discouraged from reporting harassment, Plaintiff did not report this incident.

32. In or about August 2020, and due to Couchoud often being located at Defendant's other locations, Couchoud tasked Plaintiff with leading morning meetings to ensure that

Defendant's goals were achieved in a timely fashion, thus demonstrating Couchoud's belief in Plaintiff's value to the organization.

33. On or about November 4, 2020, Defendant moved to a new office in New Jersey, and Defendant failed to transport Plaintiff's supplies to the new office. Plaintiff was the only employee who had to make her own arrangements to transfer her supplies.

34. On or about November 12, 2020, Plaintiff protested to Couchoud that Defendant's continued practice of requiring Plaintiff to make deliveries late in the day significantly delaying the completion of Plaintiff's work. Upon information and belief, there was no legitimate business reason for these deliveries to be assigned so late in the day, and these late assignments were not given to similarly situated White employees. During this conversation, Couchoud reiterated to Plaintiff that she was best suited to replace him, but he indicated that looking into Plaintiff's concerns would "open a Pandora's box." Plaintiff took this to mean that she should not speak out against what she perceived to be unlawful retaliation.

35. In or about January 2021, a Customer Service Representative named "Kim" informed Plaintiff that she overheard Couchoud discussing his desire to fire an African-American employee but was concerned that said employee would "play the race card."

36. In or about April 2021, Couchoud again told Plaintiff that she was best suited to take his management position upon his resignation.

37. In or about August 2021, Couchoud relayed to Plaintiff that an employee at another location named "Sadiq," an African-American male, was charged with a violent crime. Couchoud noted that Sadiq had become a stereotype, thus exhibiting an animus towards African-Americans.

38. In or about August 2021, Couchoud informed Plaintiff that he would be stepping down and insisted that she apply for his position as she was his best employee and the driving force of Defendant's success at their particular center.

39. On or about October 5, 2021, Plaintiff interviewed with Soldano for Couchoud's position. During the interview, Soldano relayed to Plaintiff that Couchoud indicated Plaintiff was his best employee. After Plaintiff's interview and on the same day, Couchoud spoke with Plaintiff on the phone and suggested she not accept a salary less than $60,000/year, the salary of Couchoud's predecessor.

40. On or about October 14, 2021, Soldano informed Plaintiff that Defendant would offer no more than $57,000 for the management position. Plaintiff requested a day to discuss this matter with her husband.

41. On or about October 15, 2021, Soldano informed Plaintiff that the management position was given to Magill, a white woman, who previously gossiped about wanting to "beat up" Plaintiff as described above.

42. On November 2, 2021, counsel for Plaintiff submitted a letter to Defendant on Plaintiff's complaining of race discrimination and retaliation regarding the above events.

43. Defendant did not respond to Plaintiff's counsel's November 2, 2021 letter.

44. On or about November 12, 2021, Plaintiff informed Magill that she was diagnosed with anxiety and depression. Subsequently, on or about November 17, 2021, Plaintiff took a medical leave of absence due to her disabilities.

45. On or about March 3, 2022, while Plaintiff was still out of work on a medical leave of absence, Defendant terminated Plaintiff's position and demanded that she return Defendant's items.

46. Defendant failed to take appropriate remedial measures to address or prevent the discriminatory and retaliatory conduct towards Plaintiff, including the hostile work environment to which she was subjected.

47. Plaintiff's race was a motivating and/or determinative factor in Defendant's discriminatory and retaliatory treatment of her, including, but not limited to, her non-promotion and termination.

48. Plaintiff's disability, including her record of disability and Defendant's regarding her as disabled, was a motivating and/or determinative factor in connection with Defendant's discriminatory treatment of her, including, but not limited to, her non-promotion and termination.

49. Plaintiff's requests for reasonable accommodations were motivating and/or determinative factors in connection with Defendant's discriminatory and retaliatory treatment of her, including, but not limited to, her non-promotion and termination.

50. Plaintiff's opposition to discrimination and retaliation was a motivating and/or determinative factor in Defendant's retaliatory treatment of her, including, but not limited to, her non-promotion and termination.

51. The retaliatory actions taken against Plaintiff after she engaged in protected activity would discourage a reasonable employee from complaining of discrimination at Defendant.

52. As a direct and proximate result of Defendant's discrimination and retaliation, Plaintiff has in the past incurred, and may in the future incur, a loss of earnings and/or earning capacity, loss of benefits, pain and suffering, embarrassment, humiliation, loss of self-esteem, mental anguish, and loss of life's pleasures, the full extent of which is not known at this time.

53. Defendant acted with malice and/or reckless indifference to Plaintiff's protected rights, which warrants imposing punitive damages against Defendant.

### COUNT I – 42 U.S.C. §1981
*Plaintiff v. Defendant*
- **Race Discrimination**
- **Retaliation**

54. Plaintiff incorporates the foregoing allegations of this Complaint as if set forth herein in their entirety.

55. By committing the foregoing acts of race discrimination and retaliation against Plaintiff, including failing to promote Plaintiff and terminating Plaintiff's employment, Defendant has violated Section 1981.

56. Said violations were intentional and with malice and/or reckless indifference to Plaintiff's rights and warrant imposing punitive damages.

57. As a direct and proximate result of Defendant's violation of Section 1981, Plaintiff has sustained the injuries, damages, and losses set forth herein and has incurred attorneys' fees and costs.

58. Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant's unlawful acts unless and until this Court grants the relief requested herein.

### COUNT II – NJLAD, N.J.S.A., §10:5-1, *et seq.*
*Plaintiff v. Defendant*
- **Race Discrimination**
- **Retaliation**
- **Disability Discrimination**
- **Failure to Accommodate**

59. Plaintiff incorporates the foregoing allegations of this Complaint as if set forth herein in their entirety.

60. Defendant has violated the NJLAD by committing the foregoing acts of discrimination and retaliation on the basis of race and disability against Plaintiff, including,

without limitation, failing to engage in an interactive process and/or provide Plaintiff reasonable accommodations, failing to promote Plaintiff, and terminating Plaintiff's employment.

61. These violations were intentional and willful and warrant imposing punitive damages.

62. Members of Defendant's upper management had actual participation in, and/or willful indifference to, Defendant's wrongful conduct described herein, and its conduct warrants imposing punitive damages against Defendant.

63. As a direct and proximate result of Defendant's violation of the NJLAD, Plaintiff has suffered the damages and losses set forth herein and has incurred attorneys' fees and costs. Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant's discriminatory acts unless this Court grants the relief requested herein.

## RELIEF

**WHEREFORE**, Plaintiff seeks damages and legal and equitable relief in connection with Defendant's unlawful conduct, and specifically prays that this Court grant her the following relief by:

(a) declaring the acts and practices complained of herein to be in violation of Section 1981;

(b) declaring the acts and practices complained of herein to be in violation of the NJLAD;

(c) enjoining and permanently restraining the violations alleged herein;

(d) entering judgment against Defendant and in favor of Plaintiff in an amount to be determined;

(e) awarding compensatory damages to make Plaintiff whole for all lost earnings,

earning capacity and benefits, past and future, which Plaintiff has suffered or may suffer as a result of Defendant's unlawful conduct;

(f) awarding compensatory damages to Plaintiff for past and future pain and suffering, emotional upset, mental anguish, humiliation, and loss of life's pleasures, which Plaintiff has suffered or may suffer as a result of Defendant's unlawful conduct;

(g) awarding punitive damages to Plaintiff;

(h) awarding Plaintiff any other damages that are appropriate under Section 1981 and the NJLAD;

(i) awarding Plaintiff the costs of suit, expert fees and other disbursements, and reasonable attorneys' fees; and

(j) granting any other relief that this Court may deem just, proper, or equitable including other equitable and injunctive relief providing restitution for past violations and preventing future violations.

## JURY TRIAL DEMAND

Plaintiff demands a trial by jury.

**SIDNEY L. GOLD & ASSOC., P.C.**

By: /s/ Brian C. Farrell
Brian C. Farrell, Esquire
NJ I.D. No.: 129622014
1835 Market Street, Suite 515
Philadelphia, PA 19103
(215) 569-1999
bfarrell@discrimlaw.net
*Attorney for Plaintiff Kristen Cox*

Date: October 13, 2023